**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **ANTHONY SUGGS,** | **Case No. 5:18-CV-743** |
| Petitioner, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge George J. Limbert** |
| **EDWARD SHELDON, Warden** | |
| Respondent | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge George J. Limbert (Doc. No. 17), which recommends that Petitioner Anthony Suggs's Petition for Writ of Habeas Corpus (Doc. No. 1) be dismissed with prejudice. Petitioner has filed Objections to the R&R. (Doc. No. 20.) For the following reasons, Petitioner's objections to the R&R are overruled. The R&R is adopted and the Petition is DISMISSED.

**I.     Background**

    **A.     Factual Background**

The Court of Appeals for the Ninth District of Ohio (hereinafter "state appellate court") summarized the facts underlying Suggs's state court conviction as follows:

> {¶2} According to Betty B., on July 24, 201[4][1], Mr. Suggs, her ex-boyfriend, came to her house looking for her. When she went outside to talk to him, he immediately struck her, causing her to temporarily lose consciousness. When she came to, she was back inside her house, and Mr. Suggs was still attacking her. At some point, Mr. Suggs got a knife from the kitchen and held it to her throat. He then forced her upstairs and into the bathroom. He also allegedly reached into her bra and took money that she was keeping there. By this time, however, police had responded to emergency calls placed by the others in the house. After kicking through the front door

---

[1] According to the trial transcript filed as part of the Respondent's State Court Record, Suggs assaulted Betty B. on July 24, 2014, not 2015. (Doc. No. 7-4, PageID# 318.)

of the house, the responding officers came upstairs with their firearms drawn. Upon seeing the officers, Mr. Suggs attempted to crawl out the bathroom window, but they dragged him back inside. After handcuffing Mr. Suggs, they searched him and found cocaine.

{¶ 3} The Grand Jury indicted Mr. Suggs for aggravated robbery, aggravated burglary, kidnapping, felonious assault, possession of cocaine, obstructing official business, and resisting arrest. At trial, the jury found him guilty of kidnapping, the lesser-included offense of assault, possession of cocaine, obstructing official business, and resisting arrest. The trial court sentenced him to a total of 12 years for those offenses. That same day, it also sentenced him in two other cases. Finding that he had violated the community control he was under for a previous offense, the court sentenced him to two years imprisonment. It also sentenced him to three years imprisonment for trafficking in cocaine and heroin offenses that arose out of a separate incident. The court ordered Mr. Suggs to serve his prison terms in each of the three cases consecutively for a total of 17 years.

*State v. Suggs*, Nos. 27812, 27865, 27866, 2016 WL 4649486, at *1 (Ohio App. 9th Dist. Sept. 7, 2016).

### B. Procedural History

#### 1. Relevant Prior State Trial Court Proceedings

Prior to Suggs's July 2014 assault of Betty B., Suggs pleaded guilty to various offenses in two separate state court proceedings.

##### a) Case Number CR-2012-03-0638

On March 13, 2012, the Summit County Grand Jury indicted Suggs on four counts: robbery, felonious assault, domestic violence, and unlawful restraint. (Doc. No. 17 at PageID# 736.) On March 14, 2013, Suggs retracted his not guilty plea and pleaded guilty to felonious assault and domestic violence. (*Id.*) The trial court dismissed the remaining changes on the recommendation of the State. (*Id.*) The trial court sentenced Suggs to two years in prison and a mandatory period of three years of post-release control. (*Id.*) Suggs would be permitted to file a motion for judicial release after serving six months' imprisonment. (*Id.*) On December 6, 2013, the trial court granted Suggs's

request for judicial release. (*Id.*) The trial court suspended the balance of his prison sentence and placed him on community control for a two-year period. (*Id.*)

### b) Case Number CR-2014-03-0883

On April 4, 2014, the Summit County Grand Jury indicted Suggs on five drug-related counts: trafficking heroin, trafficking cocaine, possession of heroin, possession of cocaine, and possession of drug paraphernalia. (*Id.*) The State also charged Suggs with violating his community control terms and conditions due to these new charges. (*Id.*) On July 15, 2014, Suggs waived a community control violation hearing and admitted the violation. (*Id*. at PageID# 737.) Suggs subsequently pleaded guilty to the trafficking counts, which were amended to lesser felonies. (*Id.*) The trial court accepted Suggs's plea and dismissed the remaining charges and remaining criminal forfeiture specifications upon the State's recommendation. (*Id.*)

### 2. State Trial Court Proceedings

Following his assault of Betty B., the Summit County Grand Jury indicted Suggs on ten counts on August 4, 2014: aggravated robbery (Count One), aggravated robbery (Count Two), aggravated burglary (Count Three), aggravated burglary (Count Four), kidnapping (Count Five), felonious assault (Count Six), felonious assault (Count Seven), possession of cocaine (Count Eight), obstructing official business (Count Nine), and resisting arrest (Count Ten). (*Id.*) Suggs pleaded not guilty. (*Id.*) This case was numbered as CR-2014-07-2219. (*Id.*)

On April 13, 2015, the jury found Suggs guilty of kidnapping (Count Five), a lesser included offense of assault (Count Six), possession of cocaine (Count Eight), obstructing official business (Count Nine), and resisting arrest (Count Ten). (*Id.* at PageID# 738.) The trial court sentenced Suggs to eleven years for Count Five, 180 days for Count Six, one year for Count Eight, 90 days for Count

Nine, and 90 days for Count Ten. The trial court ordered the sentences imposed on Count Five and Eight to be served consecutively to each other, and ordered the sentences imposed in Counts Six, Nine, and Ten to be served concurrently with each other and concurrently with Counts Five and Nine.[2] (*Id.*)

That same day, the trial court in CR-2012-03-0638 revoked Suggs's community control and imposed a two-year prison term for Count Two (felonious assault). (*Id.*; *see also* Doc. No. 7-1, Ex. 15, PageID# 107.) The trial court in CR-2014-03-0883 sentenced Suggs to eighteen months in prison for amended Count One (trafficking heroin) and eighteen months in prison for amended Count Two (trafficking cocaine), to be served consecutively to each other. (Doc. No. 17, PageID# 738; *see also* Doc. No. 7-1, Ex. 16, PageID# 109.) The trial court ordered that the twelve-year sentence imposed in CR-2014-07-2291 be served consecutively to the five total years imposed in CR-2012-03-0638 and CR-2014-03-0883. (Doc. No. 17, PageID# 738.)

### 3. Direct Appeal

Suggs, through appellate counsel, filed notices of appeals in each of his three criminal cases, as well as notices of delayed appeal in CR-2012-03-0638 and CR-2014-03-0883. (*Id.*) The state appellate court granted the delayed filings and consolidated the three appeals. (*Id.*)

Suggs, through counsel, filed an appellate brief on March 9, 2016. In his brief, Suggs raised the following assignments of error:

    I.    The trial court erred by entering a judgment of conviction as to Count Five, Kidnapping as a felony of the 1st degree, and sentencing accordingly, as the verdict form was sufficient only for a felony of the 2nd degree.
    II.    The trial court erred by not granting Suggs [sic] motion for mistrial based on the prosecutor's statement during the closing argument.

---

[2] The Court notes, as did the Magistrate Judge, that the trial court may have meant concurrently with Counts Five and *Eight*, not Nine. (Doc. No. 17, PageID# 738; *see also* Doc. No. 7-1, PageID# 105.)

    III.    A. Mr. Suggs was denied his constitutional right to effective assistance of counsel at trial when the trial counsel failed to ask for the jury instruction for lesser included offenses of Kidnapping.
B. Mr. Suggs was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to object to the inadequate verdict form.

    IV.    Conviction of Suggs for Kidnapping was against the manifest weight of the evidence, as the jury clearly lost its way in determining that Suggs committed Kidnapping offense.

    V.    The trial court erred when it improperly impose [sic] maximum and consecutive sentence [sic].

(Doc. No. 7-1, Ex. 26, PageID# 126, 137.) On September 7, 2016, the state appellate court overruled Suggs's assignments of error on the merits and affirmed the judgment of the trial court. (Doc. No. 7-1, Ex. 29.)

### 4. Appeal to Ohio Supreme Court

On January 13, 2017, Suggs, proceeding *pro se*, filed a delayed notice of appeal of the state appellate court's September 7, 2016 ruling with the Ohio Supreme Court. (Doc. No. 17, PageID# 739; Doc. No. 7-1, Ex. 31.) On March 15, 2017, the Ohio Supreme Court granted Suggs's motion for delayed appeal and ordered Suggs to file a memorandum in support of jurisdiction within thirty days. (*Id.*) On April 20, 2017, the Ohio Supreme Court noted that "[t]he records of this court indicate that appellant has not filed a memorandum in support of jurisdiction, due April 14, 2017, in compliance with the Rules of Practice of the Supreme Court of Ohio and therefore has failed to prosecute this cause with the requisite diligence." (Doc. No. 7-1, Ex. 34.) The Ohio Supreme Court thus dismissed Suggs's case. (*Id.*)

### 5. Post-Conviction Relief Proceedings

On November 29, 2017, Suggs executed a petition in the trial court to vacate or set aside judgment of conviction or sentence, which was filed on December 11, 2017. (Doc. No. 17, PageID# 740.) Suggs set forth a single claim:

> I. A violation of Amendment IV, V, VI, and XIV
> A witness for the state was giving [sic] a leanient [sic] sentence to testify. The prosecution did not tell the court or defense about the "deal." As required by Crim. R. 16(B)(1)(e). Since this happened Crim. R. 33(A)(2) is the remedy. This is a Brady violation, prosecutorial misconduct.

(Doc. No. 7-1, Ex. 35, PageID# 218.) Suggs also filed motions for appointment of counsel and for expert assistance. (Doc. No. 7-1, Exs. 36, 37.) The trial court denied Suggs's motion as untimely. *See State v. Suggs*, Case Nos. CR 2012-03-0638, CR 2014-03-0883, CR 2014-07-2219, Doc. No. 4 (Summit Cty. Ct. Common Pleas Feb. 13, 2019) https://clerkweb.summitoh.net/PublicSite/Documents/sumzzzi70000071B.pdf. The trial court also concluded that, even if it considered the merits of Suggs's motion, Suggs failed to show a constitutional error occurred at trial, and also that the doctrine of *res judicata* barred Suggs from raising this claim now, when he failed to raise it on direct appeal. *Id.* Because Suggs's motion for post-conviction relief was time-barred, the court ruled that Suggs's other motions were moot and even if they were considered on their merits, Suggs was not entitled to either appointment of counsel or an expert on a petition for post-conviction relief. *Id.*

Suggs filed a motion for delayed appeal in the state appellate court on August 12, 2019. (Doc. No. 17, PageID# 740.) The state appellate court dismissed Suggs's appeal on September 3, 2019. (*Id.*) The state appellate court reasoned that Ohio App. R. 5(a) did not apply to post-conviction

6

proceedings and also that Suggs's contention of improper service of the trial court's February 13, 2019 order was meritless because his appeal was nevertheless untimely. (*Id.*)

On October 9, 2019, Suggs filed a notice of appeal and accompanying memorandum in support of jurisdiction with the Ohio Supreme Court. (*Id.*) Suggs raised the following propositions of law:

> I. The 9th District Court of Appeals erred when it denied Appellant's request of "Postconviction Relief Pursuant to R.C. 2953.21 to Vacate Appellant's Conviction on the Basis That It Is Void or Voidable Under the U.S. Constitution or the Ohio Constitution" when at trial the defence [sic] wasn't notified that a state witness was giving [sic] a leanient [sic] sentence to testify against the Appellant."
> II. The 9th District Court of Appeals erred when it denied Appellant's "Postconviction Relief Pursuant to R.C. 2953.21["] because App. R. 5 dose [sic] not apply to postconviction hearings.
> III. The 9th District Court of Appeals abused it's [sic] discretion when it denied Appellant's "Postconviction Relief" under R.C. 2953.21 on the basis that the time for appeals begins to run only after the clerk of courts notes service of the entry on the service docket.

Petition to Vacate or Set Aside Judgment of Conviction or Sentence, *State v. Suggs*, No. 2019-1380 (Ohio Oct. 2, 2019). On November 26, 2019, the Ohio Supreme Court declined to accept jurisdiction of Suggs's appeal. (Doc. No. 17, PageID# 741.)

### 6.   Application to Reopen Appeal Pursuant to Ohio App. R. 26(B)

Suggs filed a delayed application to reopen his appeal, pursuant to Ohio App. R. 26(B), in the state appellate court on February 25, 2019. (*Id.*) Suggs argued that he was prevented from timely filing to reopen his appeal because his appellate attorney failed to inform him of his right to file to reopen his appeal under Ohio App. R. 26(B). (*Id.*) He also argued that his appellate attorney was ineffective for "not appealing the sufficiency" of Suggs's conviction for kidnapping and for failing to appeal the inadequate jury instructions given at trial. (*Id.* at PageID# 742.) Finally, Suggs argued that a manifest miscarriage of justice would occur if his application was not granted, "based on actual

7

and factual innocence claim [sic]." (*Id.*) The state appellate court denied Suggs's application for reopening, concluding that Suggs did not demonstrate good cause for his delayed application. (*Id.*) According to the docket, Suggs never appealed the state appellate court's denial to the Ohio Supreme Court. *See State v. Suggs*, No. CA-27812 Docket (last accessed Nov. 11, 2020), https://clerkweb.summitoh.net/RecordsSearch/Dockets.asp?CaseID=727181&CT=&Suffix=.

### 7. Federal Habeas Corpus Petition

On March 27, 2018, Suggs, proceeding *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Suggs presented the following four grounds for relief:

> **GROUND ONE:** Violations of the IV, V, VI, and XIV Amendments of the United States Constitution
>
> **Supporting Facts:** During closing argument the prosecutor stated that, "He was enraged. He had a knife. He was going to kill Ms. Bittner." Mr. Suggs was not charged with Murder, or Attempted Murder. Plus all the charges that envolved[sic] the knife Mr. Suggs was found not guilty of. The prosecutor attached a felony to the Kidnapping charge to mislead the jury to find Mr. Suggs guilty. This is prosecutorial misconduct. So in doing this it was impossible for Mr. Suggs to have a fair & impartial jury. Which means no fair trial.
>
> **GROUND TWO:** Violations of the IV, V, VI, & XIV Amendments of the United States Constitution.
>
> **Supporting Facts:** Mr. Suggs was denied his right to effective assistance of counsel at trial when the trial counsel failed to ask for the jury instruction for lesser included offenses of Kidnapping. The essential elements for Kidnapping in this case are clearly not met giving[sic] that Mr. Suggs was found not guilty of all the other felonies that were need[sic] to find him guilty of Kidnapping— in this case "Unlawful Restraint," & "Abduction" should have been introduced to the court as lesser included offenses. Insuring [sic] Mr. Suggs a fair trial.
>
> **GROUND THREE:** Violations of the IV, V, VI, & XIV Amendments of the United States Constitution.

8

> **Supporting Facts:** Conviction of Suggs for Kidnapping was not sufficient, so the jury clearly lost its way in determining that Suggs committed the Kidnapping offense. This is because the essential elements needed to find one guilty of Kidnapping is not here. The sentence in this case is "void"!!! Because not one of the elements are presented the court should have corrected this imediately[sic] instead Mr. Suggs was sentenced to 11 years. Suggs did not have a fair trial, and it's clear he did not get Due Process.
>
> **GROUND FOUR:** Violations of the IV, V, VI, & XIV Amendments of the United States Constitution.
>
> **Supporting Facts:** The judge could only impose maximum & consecutive sentences if a defendant is found to be a "danger" to the public by how serious the crime is. Looking at the offense committed if the court didn't corrupt the jury Mr. Suggs will not be guilty of Kidnapping. So the only violence involved is a misdemeanor. In conclusion these drug charges, & misdemeanors should be ran[sic] concurrently. Since the Kidnapping wasn't corrected by the judge Mr. Suggs could not have received a fair trial.

(Doc. No. 1, PageID# 5-10.) Warden Edward Sheldon ("Respondent") filed a Return of Writ on October 2, 2018. (Doc. No. 7.) Suggs filed a Traverse on November 12, 2019. (Doc. No. 16.)

On December 27, 2019, Magistrate Judge George J. Limbert issued an R&R recommending that Suggs's Petition be dismissed with prejudice. (Doc. No. 17.) Magistrate Judge Limbert concluded that all four grounds raised in Suggs's petition are procedurally defaulted and not excused. (*Id.* at PageID# 752.) Further, the Magistrate Judge concluded that Suggs did not produce any new evidence to carry the heavy burden of actual innocence. (*Id.* at PageID# 755.)

After requesting an extension of time, Suggs timely filed Objections to the R&R on March 9, 2020. (Docs. No. 19, 20.)

**II.     Standard of Review**

Parties must file any objections to a Report and Recommendation within fourteen days of service. Fed. R. Civ. P. 72(b)(2). Failure to object within this time waives a party's right to appeal

9

the district court's judgment. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

When a petitioner objects to the magistrate judge's Report and Recommendation, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). A district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*. "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, No. 3:04-cv-7584, 2006 WL 903199, at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949-50).

The Court conducts a *de novo* review of the portions of the Magistrate Judge's Report to which Petitioner has properly objected.

**III. Analysis**

    **A. Procedural Default**

The Magistrate Judge concluded that Suggs procedurally defaulted all four of his grounds for relief because he raised each of the grounds for relief in his direct appeal but failed to raise any grounds for relief in his subsequent appeal to the Ohio Supreme Court. (Doc. No. 17, PageID# 752-53.) Suggs did not object to the Magistrate Judge's conclusion that Suggs's claims are procedurally defaulted. Indeed, Suggs argued that he can overcome the procedural bar by demonstrating cause and prejudice: "However, Suggs provided in his Traverse adequate grounds to overcome the

10

procedural bar." (Doc. No. 20, PageID# 763.) Therefore, finding no clear error, the Court adopts the Magistrate Judge's finding that all four of Suggs's grounds for relief are procedurally defaulted.

### B. Cause and Prejudice for Suggs's Procedural Default

The Magistrate Judge concluded that Suggs cannot show cause to overcome the procedural default of Grounds One through Four. (Doc. No. 17, PageID# 754-55.) Suggs objected.

In his Objections, Suggs argued that he established cause for his procedural default because he was prevented from accessing the prison library to conduct legal research for his memorandum in support of jurisdiction in the Ohio Supreme Court. (Doc. No. 20, PageID# 764.) Suggs argued that this inability to access the prison library amounted to "'an objective factor external to the defense [that] impeded his efforts to comply with [the] state procedural rule.'" (*Id.*, quoting *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006).) He argued that the Magistrate Judge incorrectly stated that Suggs had "limited access" to the law library. (*Id.*) Suggs argued that his case is different from the well-established line of Sixth Circuit caselaw that established that limited access to the prison law library does not constitute cause for default. *See, e.g., Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Instead, Suggs argued that, because the law librarian quit the Mansfield Correctional Institution on April 1, 2017, Suggs had no access to the law library and was therefore denied access to the courts under *Bounds v. Smith*. (Doc. No. 20, PageID# 764.) Suggs stated that he did everything in his power to access the law library and referred the Court back to his Traverse exhibits 1-3. (*Id.*)

Where a petitioner has procedurally defaulted claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

11

Demonstrating cause requires showing that an "objective factor external to the defense impeded counsel's efforts to comply" with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See also Gerth v. Warden, Allen Oakwood Corr. Inst.,* 938 F.3d 821, 830 (6th Cir. 2019). "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (citing *United States v. Frady,* 456 U.S. 152, 170-71 (1982)). *See also Beuke v. Houk*, 537 F.3d 618, 634 (6th Cir. 2008).

Suggs argues that he was denied access to the prison library such that he was denied access to the courts. (*See* Doc. No. 20, PageID# 764.) A prisoner's constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (abrogated on other grounds by *Lewis v. Casey*, 518 U.S. 343, 354 (1996)). However,

> *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," *id.*, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

12

*Lewis*, 518 U.S. at 351. To establish cause, the petitioner must demonstrate that a prison's resources were so inadequate that it was impossible for him to access the courts and raise his claims. *Doliboa v. Warden U.S. Penitentiary Terre Haute*, 503 Fed. App'x. 358, 360 (6th Cir. Oct. 29, 2012) (citing *Jones v. Armstrong*, 367 Fed. App'x. 256, 258 (2d Cir. 2010)).

The Court finds that Suggs failed to establish cause for his procedural default. Suggs did not establish that he was denied access to the prison library and, thus, lacked "meaningful access to the courts." *See Lewis*, 518 U.S. at 351. To the contrary, Suggs's exhibits to his Traverse—to which he repeatedly directs the Court's attention—clearly establish that Suggs had access to the library at the time that he received the order from the Ohio Supreme Court. Suggs attached an "Informal Complaint Resolution" that Suggs sent to prison personnel in May 2017 as an exhibit to his Traverse. (Doc. No. 16-6, PageID# 729.) Suggs stated the following:

> On 3-20-17 (a Monday) ireceived[sic] a pass for legal mail it was a response from the Ohio Supreme Court granting my delayed appeal, deadline was 4-14-17. **At the time I was going to the law library twice a week.** (Sat. & Sun.) Sat., 4-25-17[3] I asked the legal aid for help getting more days to research. The maximum days a week is 4. I sent a kite requesting Wed., Thur., Fri.,& Sat. I never received my kite back. On 4-1-17 the librarian stopped working here. After talking with several inmates who experienced the kites not being returned I assumed it was because the librarian was leaving. Yet I sent another kite to the same results. I talked to my case manager Mrs. Thorne Who told me to kite Ms. McMillan on 4-3-17 I sent a kite requesting some proof to send to the Ohio Supreme Court that I didn't have the appropriate time to research how to file the paperwork. I also asked Mr. Melton for the proof, he E-mailed the vice principal at the school because they were in charge of the library until a new librarian worked. Mr. Bacon never responded. On 4-6-17(a Thur.) I kited requesting Sat., Sun., Mon., & Tues. Tues. 4-11-17 [ ] I mailed a request for an extention[sic] of time to file my Memorandum in Support of Jurisdiction that was due that Fri. I also got the kite back granting me the days I asked for in the library. Since I didn't have enough time to research how to file "The Paper Work" I didn't add a "Certificate of Service) which gose[sic] on all motions. Due[sic] to this the Ohio Supreme Court are tring[sic] to dismiss my appeal. . . .

---

[3] The Court assumes that "4-25-17" should read "3-25-17," as April 25, 2017 would have been past the deadline for Suggs to file his memorandum in support.

13

(Doc. No. 16-6, PageID# 729 (emphasis added).)

In another exhibit attached to his Traverse, Suggs filed a similar grievance with prison personnel. (Doc. No. 16-8, PageID# 731.) In this grievance, Suggs wrote that on Monday, March 20, 2017, he received the order from the Ohio Supreme Court and, **"[a]t the time I was going to the law library twice a week** . . . ." (Doc. No. 16-8, PageID# 731 (emphasis added).) Suggs also wrote that he "kited asking for Wed., Thur., Fri., and Sat.," to access the library, but he "never received a response." (*Id.*)

In another exhibit, Suggs attached an undated, handwritten note in which he stated that "since there is no librarian[,] **I can't get enough time in the law library**" to finish his memorandum to the Ohio Supreme Court. (Doc. No. 16-9, PageID# 732 (emphasis added). At the bottom of Suggs's note is an undated, unsigned handwritten note in response that reads "[t]he librarian asst. and teacher staff are addressing kites for library visits to the Law Library. Passes are being issued." (*Id.*)

According to his own exhibits, Suggs already had access to the prison library at the time he received the Ohio Supreme Court's March 20, 2017 order. Suggs felt simply that he did not have "enough" time in the library to complete his memorandum. (*See id.*) Suggs's assertion in his Objections that he "had 'no access' to the library as evidenced in Exhibits A through J" because the librarian quit is disingenuous. (Doc. No. 20, PageID# 764.) Suggs's exhibits clearly demonstrate that he already had access to the library two days a week. Courts have repeatedly held that limited access to the prison law library does not constitute cause sufficient to excuse procedural default. *See, e.g., Bonilla*, 370 F.3d at 498 (citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)); *Crosby v. Warden, London Correctional Facility*, No. 1:12-cv-523, 2013 WL 5963136, at *5 n. 2 (S.D. Ohio Nov. 7, 2013). Although Suggs may not have had as much access to the law library as he wished,

14

the Court nevertheless concludes that this limited access fails to constitute sufficient cause for Suggs's procedural default.[4] Accordingly, Suggs's Objections with respect to cause are overruled. The Court adopts the Magistrate Judge's conclusion that Suggs cannot excuse his procedural default.

### C. Actual Innocence

Suggs does not specifically object to the Magistrate Judge's conclusion that Suggs did not produce any new evidence to carry the "actual innocence" burden. Accordingly, the Court adopts the Magistrate Judge's conclusion.

### IV. Conclusion

For the foregoing reasons, the Court finds Suggs's Objections (Doc. No. 20) are overruled, the Report & Recommendation (Doc. No. 17) is adopted in its entirety, and the Petition (Doc. No. 1) is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Date: November 17, 2020

 *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

---

[4] In the absence of cause, the Court need not reach the issue of prejudice. *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). *See also Sandridge v. Buchanan*, No. 1:16-CV-2299, 2017 WL 2255378, at *11 (N.D. Ohio Apr. 27, 2017).